UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAY DANIEL BENNETT,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 2:25-cv-03648-WBS-CSK (SS)

FINDINGS AND RECOMMENDATIONS ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

(ECF Nos. 13, 16)

Plaintiff Jay Daniel Bennett seeks judicial review of a final decision by Defendant Commissioner of Social Security denying an application for disability insurance benefits.[1] In the summary judgment motion, Plaintiff contends the final decision of the Commissioner contains legal error and is not supported by substantial evidence. Plaintiff seeks a remand for further proceedings. The Commissioner opposes Plaintiff's motion, filed a cross-motion for summary judgment, and seeks affirmance.

For the reasons below, the Court recommends that Plaintiff's motion be DENIED, the Commissioner's cross-motion be GRANTED, and the final decision of the Commissioner be AFFIRMED.

/ / /

[1] This action was referred to the magistrate judge under Local Rule 302(c)(15) for the issuance of findings and recommendations. *See* Local Rule 304.

## I. SOCIAL SECURITY CASES: FRAMEWORK & FIVE-STEP ANALYSIS

The Social Security Act provides benefits for qualifying individuals unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(a). When an individual (the "claimant") seeks Social Security disability benefits, the process for administratively reviewing the request can consist of several stages, including: (1) an initial determination by the Social Security Administration; (2) reconsideration; (3) a hearing before an Administrative Law Judge ("ALJ"); and (4) review of the ALJ's determination by the Social Security Appeals Council. 20 C.F.R. §§ 404.900(a), 416.1400(a).

At the hearing stage, the ALJ is to hear testimony from the claimant and other witnesses, accept into evidence relevant documents, and issue a written decision based on a preponderance of the evidence in the record. 20 C.F.R. §§ 404.929, 416.1429. In evaluating a claimant's eligibility, the ALJ is to apply the following five-step analysis:

> **Step One**: Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to step two.
>
> **Step Two**: Does the claimant have a "severe" impairment? If no, the claimant is not disabled. If yes, proceed to step three.
>
> **Step Three**: Does the claimant's combination of impairments meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")? If yes, the claimant is disabled. If no, proceed to step four.
>
> **Step Four**: Is the claimant capable of performing past relevant work? If yes, the claimant is not disabled. If no, proceed to step five.
>
> **Step Five**: Does the claimant have the residual functional capacity to perform any other work? If yes, the claimant is not disabled. If no, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the ALJ finds a claimant not disabled, and the Social Security Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner. *Brewes v. Comm'r.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of review is a non-final agency action). At that point, the claimant may seek judicial review

of the Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has repeatedly admonished that the court cannot manufacture arguments for the plaintiff. *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court should "review only issues which are argued specifically and distinctly," and noting a party who fails to raise and explain a claim of error waives it).

A district court may reverse the Commissioner's denial of benefits only if the ALJ's decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d. at 1154. Substantial evidence is "more than a mere scintilla" but "less than a preponderance," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in the record that both supports and detracts from the ALJ's conclusion, but may not affirm on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation, or where any error is harmless. *Id.*

## II. FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS

On November 3, 2022, Plaintiff filed an application for Title II disability insurance benefits, with an alleged onset date of September 15, 2021. Administrative Transcript ("AT") 223 (ECF No. 8). Plaintiff alleged he suffered from post-traumatic stress disorder ("PTSD"), acute panic disorder, major depressive disorder, and anxiety. AT 282. Plaintiff's application was denied initially and upon reconsideration, and he sought review before an administrative law judge ("ALJ"). AT 78, 86, 133. An ALJ hearing was held on October 22, 2024. AT 37-61. Plaintiff appeared in person with counsel and

testified about his impairments, and a vocational expert ("VE") testified about hypothetical available jobs in the national economy. *Id*.

On December 10, 2024, the ALJ issued an opinion finding Plaintiff not disabled. AT 14-29. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 15, 2021, the alleged onset date. AT 19-20. At step two, the ALJ determined that Plaintiff suffered from the following severe impairment: generalized anxiety disorder. AT 20-21. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of any listing. AT 21-23 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1). Relevant here, the ALJ evaluated listing 12.06 (Anxiety and obsessive-compulsive disorders).[2] AT 21. The ALJ concluded Plaintiff had a mild limitation in understanding, remembering, or applying information, moderate limitations in interacting with others and concentrating, persisting, and maintaining pace, and a mild limitation in adapting and managing oneself. AT 21-22. The ALJ also examined whether Plaintiff's mental impairments qualify under "Paragraph C." AT 22. The ALJ found that the criteria was not satisfied due to a lack of evidence showing ongoing medical treatment, mental health therapy or highly structured settings that diminish symptoms and signs of Plaintiff's mental disorder or that Plaintiff had a minimal capacity to adapt to changes in his environment. *Id*.

The ALJ next found that Plaintiff has the residual functional capacity ("RFC") to perform a full range at work at all exertional levels but with the following nonexertional limitations: "[Plaintiff] cannot perform tandem tasks with coworkers. [Plaintiff] is limited to

---

[2] "Paragraph B" lists four categories for evaluating how a claimant's mental disorders limit their functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. To be found disabled under the Paragraph B categories, the mental disorder must result in an "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, sub. A.2.b.

"Paragraph C" sets the criteria for "serious and persistent mental disorders," requiring a showing of medically documented history of the existence of the disorder for a period of at least two years. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, sub. A.2.c.

occasional public interaction. [Plaintiff] is limited to occasional work setting changes and occasional required decision making." AT 23. In making this finding, the ALJ considered Plaintiff's symptoms "to the extent which these symptoms can reasonably be accepted as consistent with the objective medical evidence," medical opinions, and prior administrative findings. *Id*.

Evaluating the medical opinions on Plaintiff's mental limitations, the ALJ found the opinion of Dr. Aita to be partially persuasive. AT 26-27. The ALJ concluded Dr. Aita's opinion that Plaintiff had no limitations to understand, remember and perform simple/repetitive tasks and complex/detailed written and oral instructions, to perform activities within schedule, and to maintain attendance and that Plaintiff had mild limitations to adapt to usual stresses to competitive work and to complete a normal workday without interruption. AT 26 (citing AT 846). The ALJ concluded that Dr. Aita's opinions were supported by the examination of Plaintiff. The ALJ also found that these opinions were consistent with Plaintiff's improvements in his mental status examinations, improvement of symptoms through conservative treatment, findings that Plaintiff had mild limitations in memory, or that he had no memory deficits, and findings that Plaintiff had good or excellent insight. *Id*. (citing AT 838-49, 375, 488, 545, 549, 565, 567, 569, 577, 812, 816, 940, 1271, 1273, 1547).

The ALJ found Dr. Aita's opinion that Plaintiff did not have limitations in his abilities to interact appropriately with others and to maintain concentration, attention, and persistence throughout the workday to be unpersuasive. AT 27. The ALJ found this opinion to be supported by Dr. Aita's examination of Plaintiff, but to be inconsistent with Plaintiff's testimony, difficulties interacting with others, and difficulties with concentration. *Id*. (citing AT 838-49, 375, 488, 545, 549, 565, 569, 577, 812, 816, 940, 1547, 377, 564, 37-61).

Evaluating the medical opinions on Plaintiff's mental limitations, the ALJ found the opinions of Dr. Howard S. Leizer, Ph.D., Dr. Joshua D. Schwartz, Ph.D., and Dr. Muralikrishnan Parthasarathy, M.D. to be unpersuasive. AT 26-27.

State agency medical consultants Dr. Leizer and Dr. Schwartz opined that Plaintiff's mental impairments were nonsevere. AT 26 (citing AT 72-73). The ALJ thought these opinions were not supported due to inadequately considering Plaintiff's psychiatric treatment. *Id*. (citing AT 528-590, 591-653). Additionally, the ALJ concluded these opinions were inconsistent with Plaintiff's ongoing medication and psychiatric treatment, as well as the ALJ's determination of moderate limitations in Plaintiff's "Paragraph B" criteria. *Id*. (citing AT 375, 488, 545, 549, 565, 569, 577, 940, 1547).

Dr. Parthasarathy opined that Plaintiff was unable to comprehend and parcel information due to symptoms of chronic panic attacks. AT 27 (citing AT 661). The ALJ concluded that the opinion was not wholly supported by Dr. Parthasarathy's treatment notes indicating that Plaintiff did not present to treatment as having constant panic attacks and that his attention span was only mildly impaired. *Id*. (citing AT 528-90, 591-653). Additionally, the ALJ concluded that Dr. Parthasarathy's opinion was inconsistent with Plaintiff's reports of occasional panic attacks, effective management of panic attacks with medication, and reported improvement of symptoms with medication. *Id*. (citing AT 484, 375, 488, 545, 549, 565, 568, 576, 812, 816, 940, 1271, 1273, 1547).

At step four, the ALJ found that transferability of job skills was not material because the Medical-Vocational Rules as a framework support a finding of Plaintiff being not disabled regardless of whether he had transferrable job skills. AT 28. At step five, the ALJ concluded Plaintiff was capable of performing other jobs in the national economy, including: (1) hospital cleaner, Dictionary of Occupational Titles ("DOT") # 323-687-010, medium, SVP 2, with 36,000 jobs in the national economy; and (2) machine packager, DOT # 920.685-078, medium, SVP 2, with 82,000 jobs in the national economy.[3] *Id*.

---

[3] "Medium" in the ALJ's step-five determination references medium work, as defined by 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Light" in the ALJ's step-five determination references light work, as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b).

"SVP" is "specific vocational preparation," defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *See* DOT, App. C, § II, available at 1991 WL 688702.

Thus, the ALJ concluded Plaintiff was not disabled. AT 29.

On October 23, 2025, the Appeals Council denied Plaintiff's appeal. AT 1-3. Plaintiff filed this action seeking judicial review of the Commissioner's final decision, and the parties filed cross motions for summary judgment. (ECF Nos. 1, 13, 16.)

## III. ISSUES PRESENTED FOR REVIEW

Plaintiff argued the ALJ erred by: (1) improperly discounting the medical opinion testimony of Dr. Parthasarathy; and (2) improperly discounting Plaintiff's subjective symptom testimony. Pl. Mot. at 5-11 (ECF No. 13). Conversely, the Commissioner argues the ALJ: (1) properly evaluated Dr. Parthasarathy's medical opinion testimony; and (2) Plaintiff's subjective symptom testimony. Def. Mot. at 3-8 (ECF No. 16).

## IV. DISCUSSION

### A. Medical Opinion Testimony

#### 1. Legal Standards

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC" (residual functional capacity). *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

The applicable rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R.

§ 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will articulate how he considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). The new regulations "still require that the ALJ provide a coherent explanation of his reasoning" and establish "a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator or court." *Sam-Chankhiao v. Kijakazi*, 2022 WL 4226170, at *3 (E.D. Cal. Sept. 13, 2022) (citing *Hardy v. Commissioner*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021)).

2. Analysis

Plaintiff argues the ALJ erred in the evaluation of Dr. Parthasarathy because the reasons for discounting the medical opinion testimony, which include being inconsistent with records indicating improvement with medication, and a record stating Plaintiff only experienced occasional panic attacks were not supported by substantial evidence. Pl. Mot. at 5-10. Conversely, the Commissioner argues the ALJ properly evaluated Dr. Parthasarathy's medical opinion testimony because the ALJ's analysis properly invoked the supportability and consistency factors and was supported by substantial evidence. Def. Mot. at 3-6.

A summary of Dr. Parthasarathy's medical opinion testimony can be found above. As stated above, the ALJ concluded that the opinion was not wholly supported by Dr. Parthasarathy's treatment notes indicating that Plaintiff did not present to treatment as having constant panic attacks and that his attention span was only mildly impaired. AT 27 (citing AT 528-90, 591-653). Additionally, the ALJ concluded that Dr. Parthasarathy's opinion was inconsistent with Plaintiff's reports of occasional panic attacks, effective management of panic attacks with medication, and reported improvement of symptoms

with medication. *Id*. (citing AT 484, 375, 488, 545, 549, 565, 568, 576, 812, 816, 940, 1271, 1273, 1547).

The Court concludes the ALJ properly evaluated Dr. Parthasarathy's medical opinion testimony based on the supportability and consistency factors. The ALJ properly evaluated Dr. Parthasarathy's opinion based on the supportability factor by referencing Dr. Parthasarathy's own treatment records indicate finding Plaintiff's attention span was only mildly impaired and that he did not present himself as having frequent panic attacks. AT 27 (citing AT 528-90, 591-653). Additionally, while Plaintiff argues that the ALJ's consistency findings were not supported by substantial evidence, a review of the administrative record shows significant improvement over the course of treatment. While records from January 2022 show Plaintiff suffered from severe symptoms, records from June 2022 to November 2022 showed Plaintiff's symptoms decreased to moderate severity. (AT 545, 549, 565, 576, 816). A January 2023 video visit reported that Plaintiff was "doing well" on his combination of medications for anxiety. AT 940. A March 2023 video psychiatry visit reported that Plaintiff was "less anxious" with the drug Burspar and that Plaintiff was having a "good response" to medication. AT 1271. A report from the same visit described Plaintiff as "presenting with significantly improved symptoms." AT 1273. Likewise, a July 2023 video psychiatry visit reported Plaintiff was doing well and that an increase in Burspar had helped him with anxiety symptoms. AT 1547. Thus, the Court finds the ALJ's conclusion that Plaintiff's symptoms improved with treatment is supported by substantial evidence. *See Molina v. Astrue*, 674 F. 3d 1104, 1121 (9th Cir. 2012) ("We must uphold [the ALJ's decision] 'if the agency's path may reasonably be discerned.'").

Plaintiff also challenges the ALJ's invocation of a record where Plaintiff reported having only occasional panic attacks in October 2021. Pl. Mot. at 8; AT 484. The Court finds the ALJ erred in relying on this record for discounting Dr. Parthasarathy's medical opinion testimony because other records near October 2021 reported increasing or severe mental health symptoms. AT 530, 545. Thus, the Court finds the ALJ's

discounting of the medical opinion testimony on this specific consistency ground lacks substantial evidence. However, because the ALJ made other findings to discount Dr. Parthasarathy's medical opinion testimony on supportability and consistency grounds that were supported by substantial evidence, the Court finds this to be harmless error. *See Robbins v. Social Sec. Admin*, 466 F. 3d 880, 885 (9th Cir. 2006) (finding harmless error when "it was clear from the record than an ALJ's error was 'inconsequential to the ultimate nondisability determination.'"). Accordingly, the Court finds the ALJ did not err in discounting Dr. Parthasarathy's medical opinion testimony and recommends denying summary judgement for Plaintiff and granting summary judgment for Defendant on this issue.

**B. Subjective Symptom Testimony**

1. <u>Legal Standards</u>

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See, e.g., Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Commissioner of Social Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999); *see also Lambert v. Saul*, 980 F.3d 1266, 1277-78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id.* at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and

(3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see generally* SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.

"Ultimately, the 'clear and convincing' standard requires an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). "This requires the ALJ to 'specifically identify the testimony [from a claimant] she or he finds to be not credible and … explain what evidence undermines the testimony." *Lambert*, 980 F.3d at 1277 (quoting *Treichler v. Comm. of Soc. Sec. Admin*., 775 F.3d 1090, 1102 (9th Cir. 2014)). Boilerplate statements and general summaries of the evidence, without more, are not enough. *Id*. at 1277-78. That said, an ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Id*. at 1277. However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility. *Lambert*, 980 F.3d at 1277-78.

2. <u>Analysis</u>

Plaintiff argues the ALJ erred in evaluating his subjective symptom testimony by not specifically indicating what portions of Plaintiff's subjective symptom testimony were discounted, exclusively relying on conflicts with the administrative record to discount Plaintiff's testimony, and by making a finding of improvement with treatment that is not supported by substantial evidence. Pl. Mot. at 11-12. The Commissioner contests that the ALJ properly evaluated Plaintiff's subjective symptom testimony by finding the objective medical evidence did not support greater limitations and that Plaintiff's conditions improved with treatment and medication. Def. Mot. at 6-9.

Plaintiff testified that he stopped working due to experiencing a severe panic attack. AT 23. Plaintiff testified that these panic attacks impaired his balance, memory, vision in his right eye, and made his thoughts incoherent. *Id*. Plaintiff testified that medication did not resolve his symptoms, but lowered the intensity, frequency, and duration of his attacks. *Id*. Plaintiff also testified he had multiple panic attacks a day. *Id*.

The ALJ began his analysis by outlining the evidence that was consistent with Plaintiff's allegations. AT 25. The ALJ highlighted records that supported panic attack symptoms, sudden onset vision loss, and chest constrictions. *Id*. (citing AT 487). The ALJ also highlighted that Plaintiff's symptoms occurred with "the slightest confrontation" with other people and that Plaintiff presented with abnormal mood and affect. *Id*. (citing AT 431, 413, 544, 560, 1107).

The ALJ then discussed evidence was not entirely consistent with Plaintiff's allegations. The ALJ found that a record from October 2021 endorsing only "occasional" panic attacks contradicted Plaintiff's allegation that he had daily panic attacks. *Id*. (citing AT 484). The ALJ referred to records endorsing good eye contact during the treatment period to contradict Plaintiff's allegations of interacting with others. *Id*. (citing AT 432, 838, 815). The ALJ also discounted Plaintiff's allegations regarding sudden vision loss by highlighting a November 3, 2021 record that indicated Plaintiff was unsure of the date of his last vision exam. *Id*. (citing AT 531). Further, the ALJ concluded that Plaintiff's impairment improved over time with medication, citing treatment records from July 13, 2022, March 14, 2023, and July 18, 2023, which noted Plaintiff's symptoms had improved with medication. *Id*. (citing AT 567, 1271, 1547, 376, 372, 375, 544, 565, 569, 577, 816, 940, 1132, 1271, 1273, 1434-36, 1547).

In sum, the ALJ highlighted specific allegations from Plaintiff's testimony, contrasted them with the administrative record, and also discussed Plaintiff's improvement with treatment. While the ALJ erroneously invoked the October 2021 record by Plaintiff stating that his panic attacks occurred occasionally, the Court once again finds this to be harmless error as the ALJ highlighted records to discount Plaintiff's allegations about his ability to interact with others and vision difficulties. *See Robbins*, 466 F. 3d, at 885. As stated above, the Court also finds the ALJ's conclusion that Plaintiff's symptoms improved with treatment to be supported by substantial evidence. *See Tommasetti v. Astrue*, 533 F. 3d 1035, 1040 (9th Cir. 2008) (finding a favorable response to treatment undermined Plaintiff's complaints of disabling limitations). Thus,

the Court concludes that the ALJ's discounted Plaintiff's subjective symptom testimony with clear and convincing evidence. Accordingly, the Court recommends denying Plaintiff summary judgment on this issue and granting summary judgment for Defendant.

## V. CONCLUSION

Having addressed all of the points of error raised by Plaintiff, the Court finds the ALJ's decision otherwise supported by substantial evidence in the record and free from legal error. *See Ford*, 950 F.3d at 1148 (noting that a district court may reverse only if the ALJ's decision "contains legal error or is not supported by substantial evidence").

## FINDINGS AND RECOMMENDATIONS

Accordingly, the Court RECOMMENDS:

1. Plaintiff's motion for summary judgment (ECF No. 13) be DENIED;
2. The Commissioner's cross-motion (ECF No. 16) be GRANTED;
3. The final decision of the Commissioner be AFFIRMED; and
4. The Clerk of the Court is directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. This document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the Court within 14 days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: November 24, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

7, benn.3648.25.ss.msj.cjra